IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISETTE FERNANDEZ o/b/o I.F. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL, Commissioner | : | |
| of Social Security | : | NO.  18-473 |

## MEMORANDUM

**Padova, J.**                                                                                    **September 30, 2019**

Plaintiff Lisette Fernandez brought this action on behalf of her minor child, I.F., pursuant to 42 U.S.C. 1381(c)(3), seeking judicial review of the decision of the Commissioner of Social Security, Andrew M. Saul ("Commissioner"),[1] denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  After Plaintiff filed a Request for Review of the decision denying her claim for SSI benefits, we referred the matter to Chief United States Magistrate Judge Linda K. Caracappa, who issued a Report and Recommendation ("R&R") recommending that Plaintiffs' Request be denied and that judgment be entered in favor of the Commissioner.  Plaintiff filed timely objections to the R&R.  For the reasons that follow, we overrule Plaintiff's objections and adopt the R&R in its entirety.[2]

## I.      BACKGROUND

I.F. was born on November 6, 2007 and was five years old on the alleged disability onset date.  (R. 255.)  Plaintiff filed an application for SSI on January 31, 2013.  (R. 253.)  The

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted as the defendant in this case.

[2] Plaintiff requests oral argument with respect to her objections to the R&R.  We find that oral argument is not necessary in this case and deny her request.

application was denied by the Administrative Law Judge ("ALJ") on October 10, 2014. (R. 118.) Thereafter, the Appeals Council granted Plaintiff's request for review and remanded to the ALJ for further consideration of whether I.F. had an impairment that resulted in "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." (R. 138-39.) On February 1, 2017, after holding a hearing at which Plaintiff testified, the ALJ issued a second decision finding that I.F. was not disabled under Section 1614(a)(3)(C) of the Social Security Act since January 31, 2013, the date the application was filed. (R. 7, 10.)

The Social Security Act provides that a child, i.e., "[a]n individual under the age of 18 . . . is considered disabled . . . if the child has a 'physical or mental impairment, which results in marked and severe limitations, and which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'" Pizarro v. Colvin, 208 F. Supp. 3d 669, 672 (E.D. Pa. 2016) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). Federal regulations require the Commissioner to use a three-step sequential evaluation process to assess disability claims for children. Id. (citing 20 C.F.R. § 416.924(a)). In the first step, "the ALJ must determine whether the claimant is presently engaged in substantially gainful activity." Id. (citing 20 C.F.R. § 416.924(a)). Here, the ALJ found that I.F. had not been engaged in substantial gainful activity since January 31, 2013. (R. 13.)

At the second step, "the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe." Pizarro, 208 F. Supp. 3d at 672 (citing 20 C.F.R. § 416.924(a)). Here, the ALJ found that I.F. has two severe impairments: attention-deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"); and one impairment that is not severe:  a seizure disorder. (R. 13.)

At the third step, "the ALJ must determine whether the claimant's impairment or combination of impairments meet, medically equal, or functionally equal, the severity of any one

of the impairments listed in the Appendix." Pizarro, 208 F. Supp. 3d at 672 (citing 20 C.F.R. §§ 416.924(d), § 416.925; Pt. 404, Subpt. P, App. 1). "If the claimant's impairment or combination of impairments satisfies the requirements of Step Three and has lasted or is expected to last for a continuous period of 12 months, the claimant is disabled." Id. (citing 20 C.F.R. § 416.924(d)(1)). Here, the ALJ found that I.F. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Appendix]," (R. 13) and thus turned to whether the impairments are "'functionally equal' to any of the listed impairments." Pizzaro, 208 F. Supp. 3d at 673 (quoting 20 C.F.R. § 416.926a(a)).

"In determining whether a child's impairment or impairments are functionally equivalent to the severity of any of the listed impairments, the ALJ must consider the extent to which the alleged impairment limits the child's ability to function in [six domains]." Id. The six domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for oneself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). A child's "impairment(s) functionally equals the listings" if the child has "'marked' limitations in two of the domains . . . or an 'extreme' limitation in one domain." 20 C.F.R. 416.926(d). The ALJ determined that I.F. "does not have an impairment or combination of impairments that functionally equals the severity of the listings" and, therefore, has not been disabled since the application was filed. (R. 14, 23.)

Plaintiff filed a request for review of this decision, which was denied by the Appeals Council on December 19, 2017, making the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1-3.) Plaintiff subsequently filed the instant action, requesting review of the final decision of the Commissioner. Plaintiff argues that the Commissioner's final decision should be reversed for five reasons: (1) the ALJ's determination that I.F.'s seizure disorder is not

severe is not supported by substantial evidence; (2) the ALJ erred in finding that I.F. did not comply with her prescribed treatment; (3) the ALJ's finding that I.F. has a less than marked limitation in the domain of Attending and Completing Tasks is not supported by substantial evidence; (4) the ALJ's finding that I.F. has a less than marked limitation in the domain of Interacting and Relating with Others is not supported by substantial evidence; and (5) the ALJ's finding that I.F. has a less than marked limitation in the domain of Acquiring and Using Information is not supported by substantial evidence.

In her R&R, Chief Magistrate Judge Caracappa recommends, inter alia, as follows: (1) there is substantial evidence in the record to support the ALJ's determination that I.F.'s seizure disorder is not severe (R&R at 14-15); (2) the ALJ's finding with respect to I.F.'s non-compliance with prescribed treatment was proper and supported by substantial evidence (id. at 19); (3) the ALJ's finding that that I.F. has less than marked limitations in the domain of Attending and Completing Tasks is supported by substantial evidence in the record (id. at 23); (4) the ALJ's finding that I.F. has less than marked limitations in the domain of Interacting and Relating with Others is supported by substantial evidence in the record (id. at 25-26); and (5) the ALJ's finding that I.F. has less than marked limitations in the domain of Acquiring and Using Information is supported by substantial evidence in the record (id. at 28). Plaintiff has filed objections to all of the Magistrate Judge's recommendations, except for the recommendation that the ALJ's finding with respect to I.F.'s non-compliance with prescribed treatment was proper and supported by substantial evidence.

## II.    LEGAL STANDARD

We review de novo those portions of a Magistrate Judge's report and recommendation to which objections are made.  28 U.S.C. § 636(b)(1).  We "may accept, reject, or modify, in whole or in part, the [Magistrate Judge's] findings or recommendations."  Id.

We review the ALJ's decision to determine whether it is supported by substantial evidence on the record.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); and citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).  The Supreme Court has explained that "the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is 'more a mere scintilla.'"  Id. (quoting Consol. Edison, 305 U.S. at 229; and citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (explaining that substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla" (citation omitted)).  "'Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.'"  Hagans, 694 F.3d at 292 (quoting Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)).  When we conduct our review, we "'are not permitted to re-weigh the evidence or impose [our] own factual determinations.'"  Horst v. Comm'r of Soc. Sec., 551 F. App'x 41, 45 (3d Cir. 2014) (quoting Chandler v. Comm'r of Social Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

## III.    DISCUSSION

### A.    I.F.'s Seizure Disorder

Plaintiff objects to the Magistrate Judge's recommendation that there is substantial evidence in the record to support the ALJ's finding at step-two of the three-step sequential evaluation process that I.F.'s seizure disorder is non-severe.[3]  The ALJ states in her decision (R. 15) that she relied on the following record evidence to support this finding:  (1) the May 31, 2016 report prepared by Dr. Mae Dang of Children's Hospital of Pennsylvania ("CHOP"), Division of Neurology regarding I.F.'s seizures, which report discusses I.F.'s recent history of seizures occurring over the previous three months and notes that I.F. had a single electro-clinical seizure while undergoing an electroencephalogram ("EEG") on May 23, 2016 (R. 533-35); (2) medical records from Juniata Community Mental Health Clinic ("Juniata") dated June 9, 2016, which report that I.F.'s seizures are controlled with medication (R. 615); (3) medical records from Juniata dated August 2, 2016, which state that I.F. had not had a seizure in the previous two weeks and that her seizure medication appeared to be working (R. 610); (4) Plaintiff's testimony that, since I.F. began taking seizure medication, her seizures had decreased to twice a day and appear as "a straight face for about 40 seconds[;]" (R. 41); (5) Plaintiff's testimony that she had not been notified by the school that I.F. had experienced a seizure during school since I.F. had begun taking her seizure medication (R. 40).  Based on this evidence, the ALJ determined "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of

---

[3] The Magistrate Judge also recommends, in the alternative, that any error by the ALJ as with respect to this determination is harmless and Plaintiff has also objected to this alternative recommendation.  As we conclude that the ALJ's determination that I.F.'s seizure disorder is not severe is supported by substantial evidence, we need not address Plaintiff's objection to the Magistrate Judge's alternative recommendation.

the symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 15.) The ALJ further found, based on this evidence, and "[w]ith no reports from the school of any seizures this year, . . . that seizures are minimized or not occurring on current medication and under control on prescribed treatment." (Id.)

Plaintiff contends that this determination is not based on substantial evidence because the ALJ did not adequately consider medical evidence in this case that establishes that I.F. has daily seizures, rendering this impairment severe. Plaintiff relies on Dr. Dang's May 31, 2016 diagnosis of I.F. as having "convulsions, unspecified convulsion type" after she was recorded as having an electroclinical seizure while she was undergoing an EEG. (R. 535.) Plaintiff argues that the fact that I.F. had a seizure while undergoing an EEG illustrates the severity of her disorder, because the seizures occur with such frequency that they can be easily observed and recorded during a neurology assessment. However, I.F.'s EEG was conducted before she began taking medication for her seizure disorder, and the Social Security regulations state that, when evaluating seizures in "111.02 (Epilepsy) . . . we require that limitations from these neurological disorders exist despite adherence to prescribed treatment. 'Despite adherence to prescribed treatment' means that you have taken medication(s) . . . for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 111.00(C). Accordingly, I.F.'s pre-medication EEG can carry little weight in the evaluation of the severity of her seizure disorder.

Plaintiff also contends that the ALJ did not consider evidence in the record that I.F.'s seizure disorder significantly limits her daily activities, making her seizure disorder severe. Specifically, Plaintiff relies on medical records from Memphis Pediatrics, LLC, which state that I.F. was seen in connection with her seizures on August 18, 2016, at which time she complained

of seizures twice daily while she was on her medication. (R. 520.) Plaintiff also relies on her own testimony that she has to watch I.F. in the bath, because I.F. has fallen in the shower, and that she watches I.F. while she eats, in case she has a seizure while she is eating. (R. 40.) Plaintiff further relies on Dr. Dang's report, which states that I.F. has been instructed not to go "swimming alone, no heights, extra emphasis on bike helmets, and extra emphasis on street safety." (R. 525, 535.) We note that Plaintiff was also instructed by Dr. Dang that, "aside from these recommendations the patient can participate in usual activities without restriction." (R. 525, 535.)

The ALJ analyzed and specifically mentioned Dr. Dang's report and Plaintiff's testimony with respect to I.F.'s seizures in determining that I.F.'s seizure disorder is non-severe. (R. 15.) While the ALJ did not specifically mention I.F.'s August 18, 2016 medical records from Memphis Pediatrics, LLC, we note that the statement that I.F. was having seizures twice daily while on medication was noted in the records as a complaint, not a medical opinion or diagnosis. (See R. 520.) We also note that I.F. was not instructed by her doctor not to shower or eat without supervision and, in fact, Dr. Dang instructed her that, aside from instructions not to go swimming alone, to wear a bike helmet, to exercise street safety, and to stay away from heights, she could "participate in usual activities without restriction." (R. 525, 535.) We find that the ALJ did not ignore critical evidence in the record regarding the severity of I.F.'s seizure disorder, but rather weighed the record evidence, as she is required to do. Moreover, we may not reweigh that evidence, but may only consider whether there is substantial evidence supporting the ALJ's findings. See Horst, 551 F. App'x at 45 (stating that we "are not permitted to re-weigh the evidence or impose [our] own factual determinations" (quotation omitted)). Upon doing so, we find that there is significantly more than a scintilla of evidence in the record that supports the ALJ's determination that I.F.'s seizure disorder is non-severe. See Biestek, 139 S. Ct. at 1154 (quotation

and citation omitted)).  We thus conclude that there is substantial evidence in the record to support the ALJ's determination that I.F.'s seizure disorder is non-severe and we overrule Plaintiff's objection to the Magistrate Judge's Report and Recommendation with respect to this claim for review.

B.      The Domain of Attending and Completing Tasks

Plaintiff objects to the Magistrate Judge's recommendation that there is substantial evidence in the record to support the ALJ's finding at step-three of the three-step sequential evaluation process that I.F. has a less than marked limitation in the domain of Attending and Completing Tasks.  This domain concerns how well the minor child is "able to focus and maintain [her] attention, and how well [she] begin[s], carr[ies] through, and finish[es] [her] activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them."  20 C.F.R. § 416.926a(h).  The ALJ determined that I.F. has less than marked limitations in this domain even though certain SSI Disability Functional Questionnaires prepared by I.F.'s teacher and therapist (the "Questionnaires") state that she has significant problems in this domain. (R. 18.)

The ALJ discounted the Questionnaires because I.F.'s medical records "largely note stable findings" with respect to this domain.  (Id.)  The ALJ relied on medical records from Juniata dated March 5 and May 6, 2016, which state that I.F. had mild restlessness and intermittent distractibility, but also note that she "was easily directed to task, oriented times 3, mood and affect normal."  (R. 622, 626.)  The ALJ also discussed I.F.'s medical records from Tree of Life Behavioral Health ("Tree of Life") dated November 5 and 10, 2016, which state that I.F. had not taken her prescribed medication for her ADHD since 2015, that she was getting in trouble at school for being off task and talking too much, and that she was not following directions and struggles with completing

assignments. (R. 683, 685.) The Tree of Life records also note that I.F. was fidgety and/or anxious during her appointments, but her behavior was appropriate and cooperative and her mood was stable. (R. 683, 685.) The ALJ also considered I.F.'s school records, which show that she had no suspensions from school and that she received satisfactory grades. (R. 340-41, 345.) The ALJ also mentioned Plaintiff's testimony "that [I.F.] would be doing better if she resumed medications she was taking a year ago." (R. 18.)

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record because the ALJ ignored or improperly evaluated the Questionnaires prepared by I.F.'s third-grade teacher and treating therapist. I.F.'s teacher rated most of the criteria under this domain as "marked or serious," or "extreme or very serious," and wrote that I.F. has "extreme difficulty maintaining attention and performing tasks to completion" and "will be slow to complete her work if in a group." (R. 333.) I.F.'s therapist marked all of the criteria under the attending and completing tasks domain as "extreme or very serious" and commented that I.F. is not able to focus and does not complete tasks. (R. 355, 358.) The ALJ must explain her reasons for rejecting record evidence. See Fargnoli, 247 F.3d at 43 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." (citations omitted)). As we noted above, the ALJ did not fully credit these assessments because I.F.'s medical records "largely note stable findings" with respect to this domain,[4] her school records show that she has had no suspensions, and her mother stated that I.F.

_____

[4] We note that additional medical records cited by Plaintiff in her Brief and Statement of Issues in Support of Request for Review with respect to I.F.'s limitations in this domain support the ALJ's determination that her medical records "largely note stable findings" and that I.F. had less than marked limitations with respect to this domain. Specifically, I.F.'s medical records from Juniata dated September 27, 2016 (noting mild restlessness); July 5, 2016 (noting mild hyperactivity and impulsivity); April 20, 2016 (noting that I.F.'s behavior in school was good and that she exhibited mild hyperactivity); May 5, 2016 (stating that I.F. was attentive, had good eye

would do better if she resumed taking her medications. (R. 18.) We conclude that the ALJ adequately explained her reasons for not fully crediting these assessments.

Plaintiff also argues that the ALJ improperly concluded that I.F. had satisfactory grades overall, even though she had received "D" grades in reading and math and "C" grades in oral communication and writing during the first marking period of the 2016-17 school year. (See R. 340-41.) I.F. also received grades of "B" in science, social studies, computer technology, health, and music and grades of "A" in physical education and visual arts during that marking period. (Id.) The ALJ clearly considered all of these grades along with I.F.'s overall school record as she recognized that I.F. "has trouble keeping up in certain academic areas, but overall completes work satisfactorily and has not had to repeat any grades." (R. 18.) Based on the complete school records in the administrative record before us, we conclude that the ALJ's factual finding that I.F. had satisfactory grades overall is supported by substantial evidence and, therefore, we are bound by that finding. See Hagans, 694 F.3d at 292 ("'Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.'" (quoting Fargnoli, 247 F.3d at 38)).

Plaintiff also argues that the ALJ improperly failed to address daily teacher reports from November 2016 that show that, during one two-week stretch, I.F. exhibited poor classroom behavior on four days and specifically note "excessive talking," "inappropriate behavior," and lack of focus. (R. 347-48.) However, these reports also show that I.F.'s classroom behavior was great on three days during that two-week period and okay on two days (there were no notes with respect

_____

contact, exhibited mild restlessness, was cooperative, and stayed on task); February 29, 2016 (noting that I.F. has had much less disruptivity at school and her mother was not getting any school complaints); January 26, 2016 (noting that I.F. had mild impulsivity); and November 3, 2015 (stating that I.F. had mild restlessness and intermittent in-attention and that her mother said that she was doing well at school). (R. 607, 612-13, 624, 626-27, 629, 633, 639.)

to one day of the two-week period). (Id.) This evidence is consistent with the medical records from Tree of Life during the same time period that the ALJ specifically considered in her analysis as it – like the Tree of Life records – reflects that I.F. got into trouble at school for being off task and talking too much. (R. 683, 685.) We therefore conclude that the ALJ's failure to specifically discuss these school records in no way undermines her findings and does not require a conclusion that the ALJ's determination with respect to this domain was not supported by substantial evidence. Indeed, "[t]he ALJ is not . . . required to 'discuss in [his] opinion every tidbit of evidence included in the record.'" Smallwood o/b/o R.K.F. v. Berryhill, Civ. A. No. 16-3669, 2017 WL 5157619, at *9 (E.D. Pa. Nov. 7, 2017) (alteration in original) (quoting Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004)).

In sum, we find that there is substantial evidence in the record to support the ALJ's determination that I.F. has a less than marked limitation in the domain of Attending and Completing Tasks. We also find that there is sufficient evidence in the record to support the ALJ's determination that I.F.'s grades were satisfactory, that the ALJ adequately explained her reasons for not fully crediting the Questionnaires as to this domain, and that the ALJ did not disregard substantial evidence on the record with respect to this domain. Accordingly, we overrule Plaintiff's objection to the Magistrate Judge's Report and Recommendation with respect to this claim for review.

C.      The Domain of Interacting and Relating with Others

Plaintiff objects to the Magistrate Judge's recommendation that there is substantial evidence in the record to support the ALJ's finding at step-three of the three-step sequential evaluation process that I.F. has a less than marked limitation in the domain of Interacting and Relating with Others. This domain concerns how well the minor child "initiate[s] and sustain[s]

emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The ALJ determined that I.F. has less than marked limitations in this domain notwithstanding the Questionnaires prepared by I.F.'s teacher and therapist.

The Questionnaires show that I.F. has significant problems in this domain, but the ALJ discounted those assessments because I.F.'s "mental status exams largely note stable findings" with respect to this domain. (R. 19-20.) The ALJ relied on medical records from Juniata and Tree of Life. Specifically, the ALJ noted that I.F.'s medical records from Juniata dated March 5, 2016[5] show that I.F. was assessed as exhibiting normal mood and affect and mild restlessness, and that I.F. was cooperative, age appropriate and logical. (R. 626.) These records also state that I.F. was "making positive behavioral, social and academic progress" that her mood stayed happy, and that she was talkative. (Id.) The ALJ also cited I.F.'s medical records from Juniata dated July 5, 2016, which state that I.F.'s affectual range was wide and that she was cooperative. (R. 613.) I.F.'s July 5, 2016 records also state that she "is presenting with less defiance" and that "90 percent of the time in session exhibited socially appropriate behavior." (Id.) The ALJ also specifically mentioned I.F.'s August 16, 2016 medical records from Juniata, which state that I.F. exhibited full and normal affect, appropriate mood, and no defiance, and that she was well-dressed. (R. 609.) The August 16, 2016 records also state that I.F. had "shown mom some attitude which mom sees as disrespectful and disobedient" and that I.F. "listened and showed motivation to change during this session with her therapist." (Id.) The ALJ also discussed I.F.'s medical records from her

---

[5] The ALJ mistakenly referred to this medical record as being dated March 5, 2015, however, there are no medical records from Juniata dated March 5, 2015.

November 2016 appointments at Tree of Life, which state that I.F. "shows attitude when told no or delayed gratification," has "angry or temperamental outbursts," has tantrums and shows defiance, and was fidgety and anxious, but also acted appropriately, was cooperative, was fully engaged in her therapy sessions, and was calm, relaxed, and well composed. (R. 683, 685, 687.)

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ only considered I.F.'s interactions with her therapist, and did not consider her interactions with other people, including her family members and teachers. However, the medical records that the ALJ specifically mentions in her decision discuss I.F.'s interactions with family members and at school. (See R. 609, 613, 626, 683, 685, 687.) Plaintiff also argues that the ALJ's decision is not supported by substantial evidence because the ALJ ignored or improperly evaluated the Questionnaire prepared by I.F.'s therapist with respect to this domain. As we mentioned above, the ALJ acknowledged that the therapist's Questionnaire noted significant problems, but discounted that assessment because I.F.'s "mental status exams largely note stable findings." (R. 19-20.) Having reviewed the medical records on which the ALJ based this determination, we conclude that the ALJ adequately explained her reason for not fully crediting this evidence.

Plaintiff further argues that the ALJ improperly ignored I.F.'s intake records from Northwestern Health Services in January 2013, before I.F. began therapy, which show that she had significant problems in this domain. (R. 381.) However, the ALJ expressly relied on significantly more recent medical records, after I.F. began attending therapy sessions. Accordingly, we conclude that the ALJ's failure to specifically discuss and rely on the January 2013 intake records in no way suggests that the ALJ's determination with respect to this domain was not supported by substantial evidence. See Smallwood, 2017 WL 5157619, at *9 (noting that the ALJ does not have to discuss all of the evidence in the record).

In sum, we find that there is substantial evidence in the record to support the ALJ's determination that I.F. has a less than marked limitation in the domain of Interacting and Relating with Others, that the ALJ explained her reasons for not fully crediting the Questionnaire prepared by I.F.'s treating therapist as to this domain, and that the ALJ did not improperly disregard substantial evidence on the record with respect to this domain. Accordingly, we overrule Plaintiff's objection to the Magistrate Judge's Report and Recommendation with respect to this claim for review.

D.     The Domain of Acquiring and Using Information

Plaintiff objects to the Magistrate Judge's recommendation that there is substantial evidence in the record to support the ALJ's finding at step-three of the three-step sequential evaluation process that I.F. has a less than marked limitation in the domain of Acquiring and Using Information. This domain concerns how well the minor child "acquire[s] or learn[s] information, and how well [she] use[s] the information [she has] learned." 20 C.F.R. § 416.926a(g). The ALJ determined that I.F. has a less than marked limitation in this domain despite having received some poor grades in her most recent report card. (R. 17.)

The ALJ acknowledged that I.F.'s recent report card showed that she had received "D" grades in math and reading and that her teacher had assessed her as having problems in those areas. (Id.) The ALJ also noted that I.F.'s other grades were higher, that her grades were satisfactory overall, that she had not been suspended during the current school year, and that she had not repeated a grade. (Id.; see also R. 337-45.) The ALJ also considered I.F.'s April 2014 treatment records from Juniata, Dr. Dang's report, and I.F.'s November 2016 therapy records from Tree of

Life in making her determination. Specifically, I.F.'s treatment records from April 9, 2014[6] state that I.F.'s mother reported that she was doing better at school (R. 488); Dr. Dang states in her report that I.F. is in second grade and "does well academically" (R. 534); and I.F.'s November 2016 progress notes from Tree of Life state that she is fidgety, but alert and oriented to person, time and place, with stable mood and functional and logical cognition. (R. 683, 685, 687.)

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not summarize all of the record evidence in connection with this domain, particularly I.F.'s teacher's Questionnaire. The ALJ did not specifically mention I.F.'s teacher's Questionnaire in connection with this domain, but did analyze it in connection with other domains, in which she noted that the teacher's Questionnaire was inconsistent with other record evidence. (See R. 18, 19, 22.) Since it is clear that the ALJ was aware of this evidence, and had discounted it as being inconsistent with other record evidence, we conclude that the ALJ's failure to specifically discuss this Questionnaire in connection with this domain does not require a conclusion that the ALJ's determination with respect to this domain was not supported by substantial evidence.[7] As we mentioned above, "[t]he ALJ is not . . . required to 'discuss in [his] opinion every tidbit of evidence included in the record.'" Smallwood, 2017 WL 5157619, at *9 (second and third alterations in original) (quotation omitted). Plaintiff further argues that the ALJ did not give proper weight to I.F.'s poor grades in math and reading in connection with this domain. However, the ALJ did

---

[6] The ALJ's decision mistakenly states that this information appears in I.F.'s May 7, 2014 treatment notes. However, the record does not contain treatment notes for May 7, 2014 and the citation in the decision refers to the April 9, 2014 treatment notes, which contain the referenced statement by I.F.'s mother that she was doing better in school. (See R. 17, 488.)

[7] We note that the teacher's Questionnaire states that I.F. has "marked or serious" difficulties in six of the fifteen areas included in this domain and had no, or "some" difficulties in the remaining areas. (R. 331.)

consider I.F.'s grades in math and reading and explained that she weighed those grades against I.F.'s other grades, which are higher. (R. 17.) As we previously mentioned, we "are not permitted to re-weigh the evidence." <u>Horst</u>, 551 F. App'x at 45 (quotation omitted). Plaintiff also argues that the ALJ ignored evidence in the record that I.F. receives poor grades despite receiving extra help in reading from her teacher and her mother, and evidence that she was being evaluated for an Individualized Education Plan. (R. 47-48, 353, 358.) Again, the ALJ is not required to discuss every bit of evidence in the record. <u>Smallwood</u>, 2017 WL 5157619, at *9 (quotation omitted).

We find that there is substantial evidence in the record to support the ALJ's determination that I.F. has a less than marked limitation in the domain of Acquiring and Using Information and that the ALJ did not improperly disregard critical evidence on the record with respect to this domain. Accordingly, we overrule Plaintiff's objection to the Magistrate Judge's Report and Recommendation with respect to this claim for review.

## IV. CONCLUSION

For the foregoing reasons, we overrule Plaintiff's objections to Chief Magistrate Judge Caracappa's R&R and approve and adopt the R&R in its entirety, including its ultimate recommendation that Plaintiff's request for review be denied. As a result, we deny Plaintiff's Request for Review. An appropriate Order follows.

BY THE COURT:

_S/ JOHN R. PADOVA_
John R. Padova, J.